**2016 BNH 002**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 13-11508-BAH |
| | Chapter 7 |
| Jeffrey C. Pollack, | |
|     Debtor | |
| | |
| Timothy P. Smith, | |
| Chapter 7 Trustee, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 15-1037-BAH |
| | |
| Carol A. Pollack, Trustee of the | |
| Carol A. Pollack Revocable Trust, | |
|     Defendant | |

*David P. Azarian, Esq.*
*Azarian Law Office, PLLC*
*Dover, New Hampshire*
*Attorney for Plaintiff*

*Arthur O. Gormley, III*
*Gormley & Gormley, PC*
*Nashua, New Hampshire*
*Attorney for Defendant*

## MEMORANDUM OPINION

### I.  INTRODUCTION

In this proceeding the Court must determine whether the transfer of $60,741.84 by the Debtor, Jeffrey C. Pollack, was fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(B) or (e)(1) and/or 11 U.S.C. § 544(b)(1) and RSA 545-A:4(I)(b) as alleged by the Plaintiff, Timothy P. Smith, the chapter 7 trustee (the "Trustee"), and, if avoidable, whether it can be recovered in accordance

with the provisions of 11 U.S.C. § 550(a).  The Court held a trial of this matter on January 12, 2016, and took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II.  FACTS**

The Debtor filed a chapter 7 bankruptcy petition on June 11, 2013.  On Schedule B he listed a beneficial interest in the Carol A. Pollack Revocable Trust (the "NH Revocable Trust").  He also indicated that the NH Revocable Trust held property located at Copperfield Drive in Nashua, New Hampshire (the "Nashua Property").  At the time he filed for bankruptcy, the Debtor and his wife Carol Pollack (the trustee of the NH Revocable Trust and the Defendant in this proceeding) resided at the Nashua Property.

In order to understand how and why the NH Revocable Trust held title to the Nashua Property, a little background is necessary.  On March 9, 2000, the Debtor's grandmother created the Pollack Family Irrevocable Trust, a Massachusetts spendthrift trust.  The Debtor was the trustee.  The Debtor, his sister, and his aunt each held a one-third beneficial interest in this trust.  The Pollack Family Irrevocable Trust was the sole beneficiary of another trust, The Pollack Family Realty Trust, a nominee realty trust, also created on March 9, 2000 (the "MA Realty Trust").  The Debtor's sister served as the trustee.  On March 9, 2000, the Debtor's grandmother transferred her home in Stoughton, Massachusetts (the "Stoughton Property") to the MA Realty Trust.

On June 15, 2009, the MA Realty Trust sold the Stoughton Property and received $168,471.41 from the sale. The Debtor's beneficial interest in those proceeds (through his beneficial interest in the Pollack Family Irrevocable Trust) was $56,157.13.

On June 22, 2009, shortly after the sale of the Stoughton Property, the Debtor created, with the assistance of an attorney, The Pollack Realty Trust in New Hampshire (the "NH Realty Trust"). The Debtor served as the trustee of the NH Realty Trust. Carol Pollack and the Debtor's sister held the beneficial interests in the NH Realty Trust as joint tenants with rights of survivorship; the Debtor held a remainder beneficial interest.

On June 26, 2009, the NH Realty Trust purchased property located at 7 Heidi Lane in Merrimack, New Hampshire (the "Merrimack Property"). The funds to purchase the Merrimack Property came from the $168,471.41 in proceeds from the sale of the Stoughton Property, and $72,000.00 from Carol Pollack. The Debtor, Carol Pollack, and the Debtor's grandmother had previously decided to make the Merrimack Property their new home, where they would live with Carol Pollack's two children and the grandmother's daughter.

In order to make their new home work for them, they turned it into a two family home with the first floor being made handicap accessible for the Debtor's grandmother and aunt. They also decided to make further improvements and repairs. By 2011, they needed additional funds as their $50,000.00 project was turning into a $150,000.00 project. The Debtor and Carol Pollack approached TD Bank for a loan. They were told that they would obtain a better interest rate if the loan were to Carol Pollack, either as the title holder of the Merrimack Property or as the trustee and beneficiary of a revocable trust. At the time they sought the loan, the Debtor operated an S corporation known as JCP Trading, Inc. ("JCP Trading"). JCP Trading was in the business of selling sunglasses and other custom items. In connection with running JCP Trading, the Debtor was personally liable on various business-related credit card debt. The Debtor

testified that this debt would have impacted the interest rate he could obtain on a loan and consequently the monthly payment amount. Accordingly, the Debtor contacted his attorney and told him to speak directly with TD Bank so that the attorney could draft the necessary legal documents to satisfy the bank's request.

Thus, on March 30, 2011, with the assistance of the Debtor's attorney, the NH Revocable Trust was formed. Carol Pollack served as trustee and retained a beneficial interest in the trust property. The Debtor was named a contingent beneficiary. On that same date, the NH Realty Trust transferred the Merrimack Property to the NH Revocable Trust. Shortly thereafter, on April 23, 2011, the NH Revocable Trust obtained a $78,000.00 loan from TD Bank, and the NH Revocable Trust and the Debtor conveyed a mortgage to the Bank secured by the Merrimack Property.[1]

Sometime between April 23, 2011, and December 3, 2012, the Debtor's grandmother passed away and his grandmother's daughter became hospitalized. The Debtor and his wife decided they needed to downsize and move into something smaller as their two-family home was now too large for them and their two children. In addition, the Merrimack Property was too costly to maintain without the grandmother's financial contributions. For those reasons, they put the Merrimack Property on the market.

On December 3, 2012, the NH Revocable Trust sold the Merrimack Property for $305,000.00. After the payment of various closing and settlement costs as well as the TD Bank mortgage, proceeds were paid to the Debtor, to his sister, and to his sister as trustee of their aunt's special needs trust; each received a check in the amount of $60,741.84. This was done pursuant to a settlement agreement reached among the Debtor, Carol Pollack, and the Debtor's sister in October 2012. According to the Debtor, his sister had insisted that the beneficiaries of

---

[1] The mortgage identifies (and is executed by) both the NH Revocable Trust and the Debtor as mortgagors.

the Pollack Family Irrevocable Trust be cashed out upon sale of the Merrimack Property. Carol Pollack did not receive any funds from the sale of the Merrimack Property, even though she had contributed $72,000.00 towards its purchase and was the beneficiary of the NH Revocable Trust.

On the same day the Merrimack Property sold, and at the same closing office, the NH Revocable Trust purchased the Nashua Property for $182,000.00. The Debtor endorsed his check for $60,741.84 from the sale of the Merrimack Property to the settlement agent of the seller of the Nashua Property, as his contribution towards the purchase of a new residence and homestead for his family. Carol Pollack contributed approximately $80,000.00 towards the purchase, which funds came from the settlement of a personal injury action. The Debtor's mother contributed an additional $40,000.00 to purchase the Nashua Property.

At the time the Debtor used his share of the Merrimack Property proceeds to purchase the Nashua Property, the Debtor did not owe the NH Revocable Trust any money and the NH Revocable Trust was not a creditor of the Debtor. The Debtor testified that at that time he was paying his personal and household bills as they became due. He also indicated that he was not trying to hide money from his creditors when he transferred the $60,741.84 to buy the Nashua Property.

The Debtor further testified that JCP Trading was also doing well at the time of the Nashua Property purchase. In December 2012, he had an exclusive right to sell certain sunglasses. He had between $13,000.00 and $15,000.00 in a business bank account, another $5,800.00 to $6,000.00 in his checking account, and nearly $8,000.00 in receivables. He also had $20,000.00 in inventory, and the Debtor personally owned $2,500.00 in Gillette stock. While the Debtor was unsure of the total amount of his business debt as of December 2012, he testified that he did not believe he owed a lot of money then, as his busy season was in the spring

and that was when his business debt was at its highest. During those months his credit card debt[2] would average between $60,000.00 and $100,000.00. The Debtor testified that he may have had enough money to pay off all of his outstanding debt in December 2012.

In January 2013, after the NH Revocable Trust purchased the Nashua Property, the Debtor's business experienced a serious blow. He was informed that the Chinese company, with which JCP Trading had an exclusive sunglass distributorship, decided that it would start selling its sunglasses directly to American consumers through an online website at half the price that JCP Trading had been charging. As a result of the loss of its exclusive distributorship, JCP Trading's business started to decline quickly. By the end of May the business was non-existent, and the Debtor was receiving a lot of threatening phone calls. He contacted an attorney.

On June 11, 2013, the Debtor filed a chapter 7 bankruptcy petition. At the time he filed for bankruptcy relief, the Debtor owed $97,300.33 in unsecured debt. At trial, the Debtor was unable to indicate how much of this debt was owed in January 2013.

## III. DISCUSSION

The Trustee contends that (1) the Debtor's December 3, 2012, transfer of $60,741.84 from the sale of the Merrimack Property to purchase the Nashua Property can be avoided as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(B) and (e)(1) and/or 11 U.S.C. § 544(b)(1) and RSA 545-A:4(I)(b); and (2) it can recovered from the Defendant pursuant to 11 U.S.C. § 550(a).

### A. Count I - Avoidance of the Transfer under 11 U.S.C. § 548(a)(1)(B)

In Count I of the Trustee's Complaint, the Trustee seeks to avoid the Debtor's transfer as constructively fraudulent pursuant to § 548(a)(1)(B), and he seeks to recover the value of that

---

[2] The Debtor financed his business almost exclusively with credit cards, which the Debtor guaranteed. JCP Trading had no bank financing. It did have a $20,000.00 line of credit from a supplier in China, but the Debtor was not personally liable for that debt.

6

transfer from the Defendant pursuant to § 550(a).  Section 548(a)(1) of the Bankruptcy Code provides in relevant part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1); see Braunstein v. Crawford (In re Crawford), 454 B.R. 262, 271 (Bankr. D. Mass. 2011); Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.), 454 B.R. 6, 21 (Bankr. D.N.H. 2011); Dahar v. Jackson (In re Jackson), 318 B.R. 5, 23 (Bankr. D.N.H. 2004).  As the party seeking to avoid the transfer at issue, the Trustee bears the burden of proof on each element and must discharge that burden by a preponderance of the evidence.  Crawford, 454 B.R. at 271; Jackson, 318 B.R. at 23.

After considering the evidence offered at trial, the Court finds that the Trustee has failed to meet his burden of establishing that the Debtor either (1) was insolvent at the time of the transfer or became insolvent as a result of the transfer; (2) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or (3) intended to incur, or

7

believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.  Other than the Trustee's exhibit containing the Debtor's June 2013 bankruptcy petition, statement of financial affairs, and schedules, the record was completely devoid of any documentary evidence concerning either the Debtor's or JCP Trading's finances. The Trustee did not produce any financial records, which might have included bank records for the Debtor's personal accounts and JCP Trading's business accounts or business records for JCP Trading like its balance sheet, profit and loss statement, or cash flow statement.  The Trustee presented no documentary evidence that would support a finding that the Debtor was insolvent in December 2012, that he was or was about to be engaged in any business or transaction for which the Debtor's remaining assets were unreasonably small, or that he intended to incur debts that he would be unable to pay.

While the Trustee did elicit oral testimony from the Debtor as to the financial condition of his business in December 2012, that testimony does not support the Trustee's contentions. The Trustee did not offer any evidence that the Debtor was intending to incur debts beyond his ability to pay.  The Debtor testified that he was paying his bills as they became due in December 2012.  In addition, the Debtor testified that between his personal stock and his company's assets he had approximately $30,000.00 in December 2012 that he could have used to pay his company's debts, which he believed would cover the amounts then outstanding.  The Debtor was unable to state how much of his Schedule F debt was outstanding in December 2012.  The Debtor's testimony was unrefuted.  The record does not support a finding that the Debtor was insolvent in 2012 or that he was left with unreasonably small assets or capital after the purchase of the Nashua Property.

Accordingly, the Court finds that the Trustee has not met his burden of proving by a preponderance of the evidence at least one of the required elements of his fraudulent transfer

claim under § 548, specifically, § 548(a)(1)(B)(ii).  For that reason, the Court must grant judgment in favor of the Defendant on Count I.

### B.  Count II – Avoidance of the Transfer under 11 U.S.C. § 548(e)(1)

The Trustee seeks to avoid the Debtor's transfer of property as fraudulent pursuant to § 548(e)(1), which provides in relevant part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if—
>
> (A) such transfer was made to a self-settled trust or similar device;
> (B) such transfer was by the debtor;
> (C) the debtor is a beneficiary of such trust or similar device; and
> (D) the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

11 U.S.C. § 548(e)(1).[3]  Upon consideration of the record, the Court finds that the Trustee has not satisfied his burden with respect to Count II of the Complaint.  See Safanda v. Castellano (In re Castellano), 514 B.R. 555, 560 (Bankr. N.D. Ill. 2014) ("The Chapter 7 Trustee bears the burden of proving by a preponderance of the evidence that the Debtor's actions constituted an avoidable fraudulent conveyance under § 548(e).").

First, the oral and documentary evidence is clear that the Debtor's portion of the Merrimack Property sale proceeds was in the form of a check made payable to the Debtor which the Debtor then transferred directly to the settlement agent for the seller of the Nashua Property,

---

[3]  Section § 548(e) was added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act.  Battley v. Mortensen  (In re Mortensen), Bankr. No. A09-00565-DMD, Adv. No. A09-90036-DMD, 2001 WL 5025249, at *6 (Bankr. D. Alaska May 26, 2011).  The legislative history indicates that this section was enacted to address self-settled or domestic asset protection trusts, which had been authorized by some states and allowed debtors to avoid paying creditors.  Quality Meat Prods., LLC v. Porco, Inc. (In re Porco, Inc.), 447 B.R. 590, 595 (Bankr. S.D. Ill. 2011).  "Section 548(e) 'closes the self-settled trusts loophole' and was directed at the five states that permitted such trust, including Alaska," Delaware, Nevada, Rhode Island, and Utah.  Mortensen, 2011 WL 5025249, at *6 and n.43 (quoting 5 Collier on Bankruptcy ¶ 548.10[1], [3][a] n.6 (N. Alan Resnick & Henry J. Sommer eds., 16th ed.)).

9

not to the NH Revocable Trust.  Thus, the record does not support a finding that the Debtor made a transfer <u>to</u> the NH Revocable Trust.

Further, even if the Court were to find that the settlement agent was merely a conduit and the property was in fact transferred <u>to</u> the NH Revocable Trust, the record does not support a finding that the NH Revocable Trust is a "self-settled trust or similar device" under the Bankruptcy Code.  "A self-settled trust has been defined as '[a] trust in which the settlor is also the person who is to receive the benefits from the trust, usually set up in an attempt to protect the trust assets creditors.'"  <u>Id.</u> at 561; <u>see</u> H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 449-50 (2005) (statement of Rep. Cannon) (explaining that a self-settled trust is a trust created by a person for his or her own benefit with a provision restraining the voluntary or involuntary transfer of the person's interest) (quoted in 5 <u>Collier on Bankruptcy</u> ¶ 548.07[3][a] n.4).  The record is clear that the NH Revocable Trust is not an irrevocable trust or a spendthrift trust.  It does not contain any provisions that would restrict the trustee's ability to make distributions or that would protect the trust assets from claims of creditors.  The Trustee conceded as much during his counsel's closing argument.

Lastly, the record does not support a finding that the Debtor used the money to purchase the Nashua Property with any "actual intent to hinder, delay, or defraud" his creditors.  Rather, the trial record supports a finding that the Debtor received money from his grandmother upon the sale of the Stoughton Property.  This money was then used to purchase the Merrimack Property, in which the Debtor lived with his family from 2009 to 2012.  Upon the sale of the Merrimack Property, the Debtor used his share of those proceeds to purchase the Nashua Property, in which the Debtor then lived with his family from 2012 until he sold it after his bankruptcy filing.  As described earlier in this opinion, there is no doubt that the manner in which title to the properties was both held and transferred was convoluted and confusing due to his family's use of trusts.

The record is clear, however, that the Debtor received funds from his grandmother which he used to purchase homes for his extended family in 2009 and his immediate family in 2012.  If the Debtor had simply held title to each property in his individual name, the Trustee would not be contending that the Debtor made a fraudulent transfer as the Debtor would have been able to exempt his interest in each property up to $100,000.00 as his homestead.  RSA 480:1.  Residential property can be held in trust if individuals so desire, and holding property in a revocable trust does not extinguish an individual's homestead right.  RSA 480:9.  Nothing in the record suggests that the Debtor acted with actual intent to hinder, delay, or defraud his creditors.

Accordingly, the Court finds that the Trustee has not met his burden of establishing that the transfer was fraudulent within the meaning of § 548(e)(1).  For that reason, the Court will grant judgment in favor of the Defendant on Count II.

### C. Count III – Avoidance as Fraudulent under 11 U.S.C. § 544(b)(1) and RSA 545-A:4(I)(b

The Trustee seeks to avoid the Debtor's transfer as fraudulent pursuant to § 544(b) and RSA 545-A:4(I)(b).

> Section 544(b) of the Bankruptcy Code permits the avoidance of transfers that are voidable under applicable law by an unsecured creditor.  11 U.S.C. § 544(b); Official Committee of Unsecured Creditors v. Foss (In re Felt Mfg. Co., Inc.), 371 B.R. 589, 634 (Bankr. D.N.H. 2007).  The "applicable law" referred to in 11 U.S.C. § 544(b) includes New Hampshire's version of the Uniform Fraudulent Transfer Act (the "UFTA") found in NH RSA 545-A.  Felt, 371 B.R. at 634.  Under UFTA, transfers may be found fraudulent if made under circumstances which, in the absence of actual fraud, are deemed fraudulent, i.e., "constructive" fraud claims under NH RSA 545-A:4(I)(b).  Felt, 371 B.R. at 635; Dahar v. Jackson (In re Jackson), 318 B.R. 5, 12 (Bankr. D.N.H. 2004).  "Unlike actual fraud, constructive fraud is essentially unconcerned with intent and instead focuses upon economic effect and involves an analysis of objective factors."  Felt, 371 B.R. at 635; see Jackson, 318 B.R. at 13, 18.

Notinger v. Brown (In re Brown), 2008 BNH 006, 17-18.  Under New Hampshire's version of the UFTA, the following transfers are deemed constructively fraudulent:

11

    I.      A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . .

    (b)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

        (1)    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

        (2)    Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

RSA 545-A:4(I)(b).

The requirements of RSA 545-A:4(I)(b)(1) and (2) are substantively identical to the requirements of § 548(a)(1)(B)(ii)(II) and (III). Because the Court has already found that the Trustee has not satisfied those requirements, the Court must deny Count III of the Complaint as well. Accordingly, the Court shall enter judgment in favor of the Defendant on Count III.

## IV. CONCLUSION

The Trustee has failed to establish that the Debtor's transfer of $60,741.84 was fraudulent under either the Bankruptcy Code or New Hampshire state law. For that reason, the Court will issue a separate judgment in favor of the Defendant. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date: January 20, 2016                /s/ Bruce A. Harwood
                                              Bruce A. Harwood
                                              Chief Bankruptcy Judge